UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **ARMEY JOHNSON, ET AL.** | * | CIVIL ACTION NO. 65-11,130 |
| **VERSUS** | * | JUDGE ROBERT G. JAMES |
| **JACKSON PARISH SCHOOL BOARD, ET AL.** | * | MAG. JUDGE KAREN L. HAYES |

### MEMORANDUM ORDER

Before the court is a "Motion for Clarification of Court Order" [doc. # 6] filed by defendant, Jackson Parish School Board (the "School Board").[1] As explained below, the motion is **GRANTED**.

### Background

In two previous orders, the undersigned has chronicled the history and circumstances of the School Board's current predicament. (Oct. 22, 2009, Mem. Order [doc. # 17]; Dec. 7, 2009, Order [doc. # 25]). Accordingly, to the extent practicable, those facts will not be recited here. Succinctly restated, the School Board seeks guidance regarding court-ordered hiring criteria and procedures employed by the School Board. Specifically, the School Board asks whether it should use objective Criteria Number 3 (applicable to the position of "Parish Supervisor") or objective Criteria Number 4 (applicable to the position of " Title I Reading Supervisor") when

---

[1] With the consent of the intervenor, the United States, and defendant, Jackson Parish School Board, the district court referred the pending motion to clarify [doc. # 6] to the undersigned magistrate judge to conduct all proceedings and to enter a final order on the motion in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (*See*, Consent and Order of Reference [doc. # 9]).

evaluating applicants to fill the position of "Supervisor of Federal Programs" which became vacant in 2009 when the incumbent, Nathaniel Zeno, Jr., retired.

In its recent response to the court's request for additional evidence and briefing, the School Board demonstrated that Zeno served as Director of Federal Programs/Supervisor of Vocational Programs from July 1, 1984, until his 2009 retirement. *See* March 5, 1984, Board Minutes, Exh. 6 [doc. # 27]. Although the School Board considered objective criteria when it hired Zeno in 1984,[2] the contemporaneous tabulation is not sufficiently detailed to unambiguously reveal which criteria were used. (Sch. Bd. Memo., Exh. 7 [doc. # 27]).[3]

The School Board represented that from at least 1977 until June 30, 1986, it employed **both** a Title I Supervisor and a Title I Reading Supervisor. (Sch. Bd. Memo., pgs. 3-4). In 1986, the last Title I Reading Supervisor, Peggy Parker, retired, and there is no evidence that the position has ever been filled. *See* Sch. Bd. Memo., pg. 4. Instead, the School Board appointed Peggy Parker as Chapter I Reading Coordinator for an 11 month term in 1986. (Sch. Bd. Memo., pgs. 4-5; Exh. 7 [doc. # 27]). In 1987, the School Board hired Pamela McKinistry as Chapter I Reading Coordinator who remains in that position today. *Id.*[4]

---

[2] Zeno was the only applicant for the position. (Sch. Bd. Memo., pg. 3).

[3] Similarly, the School Board was unable to identify the objective criteria that it used in August 1977 to hire Zeno's predecessor, Raymond Raspberry. (Sch. Bd. Memo., pg. 2; Aug. 8, 1977 Minutes, Exh. 3 [doc. # 27]).

[4] The School Board contends that at least originally, the Chapter I Reading Coordinator position did not require application of court-approved objective criteria because the initial appointment to fill the position did not extend for 12 months. Presumably, this rationale no longer applies, as Ms. McKinistry has remained Chapter I Reading Coordinator for over 20 years. The School Board, however, did not identify the objective criteria that it used when it hired Ms. McKinistry.

If anything, the timing of the initial Chapter I Reading Coordinator hiring suggests that

According to the School Board, in October 2004 it created the new position of Title I Instructional Coordinator and hired Ms. Shirley McConnell, who held the position until July 14, 2009, when the School Board appointed her to the position of Federal Programs Supervisor. (Sch. Bd. Memo., pg. 4). In selecting Ms. McConnell for the position of Federal Programs Supervisor, the School Board applied objective Criteria Number 4 associated with Title I Reading Supervisors. *Id*.

## Discussion

In its latest memorandum, the School Board acknowledges that it arguably erred when it used the objective criteria for the position of Title I Reading Supervisor to evaluate the applicants for the then vacant Supervisor of Federal Programs position. *Based upon the evidence and argument submitted by the School Board*, the court agrees. The two positions are distinct.

Nonetheless, the School Board contends that it does not necessarily follow that it should have applied the objective criteria for "Parish Supervisors" to fill the "Supervisor of Federal Programs" position. In its brief, however, the School Board represents that

> [t]here is no particular position of "Parish Supervisor" in the Jackson Parish Public School System. Instead, that term is applied to Central Office employees who work on a 12-month basis supervising programs that are parishwide in nature, such as the Transportation Supervisor, the Food Services Supervisor, and the Personnel Director. It would appear, therefore, that the term "Parish Supervisor" was intended to apply to all 12-month supervisory positions. The position of Supervisor of Federal Programs is a 12-month position which involves the supervision of others. It should also be noted that the salary schedule for that position is the same as it is for other Central Office supervisors.

(Sch. Bd. Memo., pgs. 6-7).

---

the position replaced the Title I Reading Supervisor position. Moreover, the School Board's memorandum supports the inference that the School Board substituted "Coordinator" for "Supervisor" in the Title I Reading Supervisor position to avoid conflicts of authority with the Director of Federal Programs/Supervisor of Vocational Programs. *See* Sch. Bd. Memo., pg. 4.

3

*Based upon these representations*, it is manifest that a "Parish Supervisor" is a catchall designation that readily encompasses the Supervisor of Federal Programs. Clearly, the School Board should have applied objective Criteria Number 3 to fill the Supervisor of Federal Programs position.

In its memorandum, the School Board represents that if it had considered objective Criteria Number 3 to fill the Supervisor of Federal Programs position, then Ms. Bertha Robinson would have received the most points. *See* Sch. Bd. Memo., pgs. 7, 9. As the School Board aptly points out, however, the objective criteria point total is not dispositive. The hiring procedures approved by the court include objective and subjective considerations. Once the Administrative Review Committee certifies the objective criteria point total for each applicant, the Interview Committee then interviews each applicant, considers the rating that each received from the Administrative Review Committee, as well as seven subjective factors, before recommending to the School Board, through the superintendent, the person that the Interview Committee believes is best qualified to fill the vacant position. (the Policy, pg. 2, Def. Exh. A). Thus, even though an applicant may receive the highest objective criteria point total, in some instances, consideration of the subjective factors may support the Interview Committee's decision to recommend an applicant who received a lower objective criteria point total. *See e.g., Robinson v. Jackson Parish School Board*, Civil Action Number 93-1759 (W.D. La.).[5]

With regard to the instant vacancy, the Interview Committee recommended that the School Board hire Ms. McConnell, under the (now apparently mistaken) impression that she had received the highest objective criteria point total. As the School Board acknowledges, the

---

[5] A copy of the decision is attached hereto.

4

Interview Committee might have made a different recommendation had it known that Ms. Robinson or another applicant had, in fact, obtained the highest objective criteria point total. *See* Sch. Bd. Memo., pg. 10, n7.[6] Thus, to comply with its court-ordered hiring procedures, the School Board is obliged to have the Administrative Review Committee re-compute the point totals for the applicants using objective Criteria Number 3 and to resubmit the point totals to the Interview Committee for its use in recommending to the School Board, through the superintendent, the person that the Interview Committee believes is best qualified to fill the Supervisor of Federal Programs position.[7]

    IT IS SO ORDERED.

    THUS DONE AND SIGNED at Monroe, Louisiana, this 7th day of January 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[6] Indeed, after Ms. Robinson's attorney wrote a letter to the School Board superintendent informing him that Ms. Robinson should have been awarded considerably more objective points than Ms. McConnell, the Interview Committee apparently reconvened and recommended Ms. Robinson for the position. (Resp. Memo., Exh. D [doc. # 11]).

[7] The court recognizes that Ms. McConnell and Ms. Robinson are both African-American, and thus, race is not at issue here. However, this court previously has granted relief for the School Board's failure to comply with its policies – even in the absence of unlawful discrimination. *See Robinson v. Jackson Parish School Board*, Civil Action Number 99-1466 (W.D. La.) (James, J.) [doc. #s 23 & 26].