UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **ARMEY JOHNSON, et al** | * | |
| *Plaintiffs* | * | |
| | * | |
| **AND** | * | **CIVIL ACTION NO. 65-11,130** |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| *Plaintiff-INtervenor* | * | |
| | * | |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| | * | |
| **JACKSON PARISH SCHOOL BOARD** | * | |
| **BOARD, et al** | * | |
| *Defendants* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CONSENT ORDER
DECLARING PARTIAL UNITARY STATUS AND DISMISSAL IN
FACILITIES, TRANSPORTATION, AND EXTRACURRICULAR ACTIVITIES**

Plaintiff United States of America (the "United States") and Defendant Jackson Parish School Board (the "School Board") have engaged in good faith efforts which have addressed and resolved the Board's school desegregation obligations in the areas of facilities, transportation, and extracurricular activities. The United States and the School Board, both having reviewed the terms of this Consent Order, find that its terms are consistent with the objectives of the Fourteenth Amendment to the United States Constitution and federal law. Based on the detailed findings of fact set forth below and in consideration of the parties' mutual consent, the Court accordingly concludes that the School Board is entitled to a declaration of unitary status and dismissal in the areas described herein.

I. **Findings of Fact**

   A. **Procedural History**

   1. Pursuant to an order from the Fifth Circuit, this Court first entered a Consent Decree in this case on March 31, 1967 to desegregate the Jackson Parish School District ("District"). The School Board has continued to operate pursuant to that Decree, with subsequent modifications.

   2. In 2010, the United States, with the cooperation of the School Board, began a comprehensive review of the School Board's compliance with its obligations under the operative court orders in this case. The review included analyses of the School Board's annual court reports and responses to the United States' various requests for information as well as site visits to the District's schools in 2010, 2012, and 2013.

   3. After completing its review, the United States has initially determined, in its view, that the School Board has satisfied the requirements for unitary status in the areas of facilities, transportation, and extracurricular activities.

   B. **Facilities**

   1. The School Board operates five schools, two K-12 schools (Weston and Quitman), one elementary school (Southside Elementary school), one middle school (Jonesboro-Hodge middle school), and one high school (Jonesboro-Hodge High school).

   2. Each school serves a court-approved attendance zone within the Parish.

   3. The school facilities on each campus, while differing in age, style and construction, provide reasonably similar accommodations for students and their educational needs, regardless of the racial demographics of the students at each school.

    4.    After consideration of the facilities information provided by the School Board and examination of the school facilities during the site visit, the United States raised no challenges regarding the District's facilities.

    5.    The School Board has maintained and operated its school facilities in a nondiscriminatory manner for more than the prior three (3) years.

    **C.**    **Transportation**

    1.    The School Board utilizes a transportation plan that provides all eligible students enrolled in the District with transportation to and from school.

    2.    The bus routes included in the transportation plan have been devised based on geographical and other non-racial concerns.

    3.    No bus route has been devised for the purpose of excluding any student on the basis of race.

    4.    The School Board has operated its transportation plan for students in a nondiscriminatory manner for more than the prior three (3) years.

    **D.**    **Extracurricular Facilities**

    1.    The School Board provides students at all of its schools with a variety of extracurricular opportunities, including clubs and athletics teams.

    2.    The School Board has implemented policies and practices which effectively provide all students an opportunity to participate in extracurricular activities on a nondiscriminatory basis.

    3.    All students are free to participate in or try out for any activity on a completely voluntary basis and without any racial barriers or other requirements.

4. Ability-based try-outs (such as athletic teams, school plays, etc.), grade-based selections (such as honor roll, Valedictorian, Salutatorian, Beta Club, National Honor Society, etc.), and popularity elections (such as superlatives, homecoming honors, etc.) are conducted in a racially non-discriminatory manner that employs both subjective and objective criteria, as applicable, but does not include race as a factor.

5. Sponsors and coaches for all extracurricular activities are assigned in a nondiscriminatory manner, according to considerations unrelated to race.

6. Upon review of the School Board's extracurricular activities, the United States noted no discriminatory policies or practices related to those activities.

7. The School Board has maintained a nondiscriminatory program of extracurricular activities for more than the prior three (3) years.

## II. Conclusions of Law

### A. Legal Standard for Unitary Status

1. The ultimate goal in every desegregation case is to eliminate from each aspect of school operations the vestiges of past segregation to the extent practicable and, thus, achieve unitary status. *Freeman v. Pitts,* 503 U.S. 467, 489 (1992). Because federal court supervision of a local school system is intended to be a temporary measure only, it is the court's duty to return control of the school system to the local authorities as soon as unitary status has been achieved. *Id.* at 489.

2. The courts have long acknowledged that "local autonomy of school districts is a vital national tradition." *Id.* at 490 (quoting *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 410 (1977)). Restoring local control "at the earliest practicable date is essential to restore [the local school board's] true accountability in our governmental system." *Id.*

Therefore, a federal court's supervisory authority must not extend beyond the time that unitary status has been achieved, i.e., the effects of past discrimination have been remedied.

3. Factors to be examined to determine whether unitary status has been achieved include: (1) whether the school district has fully and satisfactorily complied with the court's desegregation orders for a reasonable period of time; (2) whether the school district has eliminated the vestiges of past *de jure* discrimination to the extent practicable; and (3) whether the school district has demonstrated a good faith commitment to the whole of the court's order and to those provisions of the law and the Constitution which were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman*, 503 U.S. at 491-492; *Board of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-250 (1991).

4. Operating in a unitary fashion for a reasonable period without circumstances adverse to desegregation is adequate to demonstrate the establishment of unitary status. *Dowell*, 498 U.S. at 248; see *Flax v. Potts*, 915 F.2d 155, 158 (5th Cir. 1990); *Monteilth v. St. Landry Pub. Sch. Bd.*, 848 F.2d 625, 629 (5th Cir. 1988); *Singleton v. Jackson Mun. Sep. Sch. Dist.*, 541 F.Supp. 904, 906-907 (S.D. Miss. 1981) (establishing three years as the period of compliance).

5. While it is necessary for a school district to remove the vestiges of discrimination from all of its operations before it has achieved unitary status, a school district must demonstrate compliance with each of the factors set forth by the Supreme Court in *Green v. County School Board of New Kent County*, 391 U.S. 430 (1968): (1) facilities; (2) transportation; (3) extracurricular activities; (4) faculty; (5) staff; and (6) student assignment.

*See also Freeman v. Pitts,* 530 U.S. 467, 492-493. In this case, the parties have submitted an agreement that the District has achieved unitary status in the areas of facilities, transportation, and extracurricular activities.

   6. Once a school district has operated a fully desegregated, unitary school system for three (3) years, the school desegregation case should be dismissed; however, the Court has the discretion to address each of the "*Green* factors" individually and declare partial unitary status as to each of them independent of the others, thereby relinquishing federal judicial supervision incrementally. *Freeman,* 530 U.S. at 490-91; *Singleton*, 541 F.Supp. at 907-08.

   7. Once the Court determines that the record reveals no continued racial discrimination and the School Board's good faith to maintain such nondiscriminatory practices, it may declare the subject area unitary. *Freeman*, 503 U.S. at 490-491.

   8. In this case, **t**he United States has agreed that the School Board has, in good faith, operated in a unitary manner for the requisite period in the areas of facilities, transportation and facilities. Based on the following analyses of each factor, the Court agrees.

 **B.** **Facilities**

   1. Physical facilities should be deemed unitary when the School Board has ensured, to the extent practicable, that its facilities are not amenable to racial identification simply on the basis of their physical condition. *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 18 (1971). The District must take corrective action to produce facilities of "like quality," with any differences in facilities, if such exist, being the result of non-race factors. *Id.* at 18-19; *Belk v.Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 328 (4th Cir. 2001).

2. Based on the facts set forth above, the School Board has demonstrated that it has operated its school facilities in a nondiscriminatory manner in accordance with these constitutional standards.

3. Upon personal review of the facilities during a site visit, the United States did not note any concerns with the operation of the facilities and has consented to unitary status in this area of operation.

4. The Court finds that the School Board is entitled to a declaration of unitary status in the area of facilities.

### C. Transportation

1. In considering the soundness of any transportation plan in light of its general desegregation obligations, the court must weigh, *inter alia,* the non-exclusion of minorities on account of race, elimination of one-race buses to the greatest degree possible, and remedial alteration of routes to achieve nondiscriminatory busing. *Swann* 402 U.S. at 22-31.

2. Based on the facts provided above, the School Board has demonstrated that it has operated its transportation plan in a nondiscriminatory manner for over three years.

3. In its review of District operations, the United States did not note any objections to the transportation operation and has consented to a declaration of unitary status in this area.

4. The Court finds that the School Board is entitled to a declaration of unitary status in the area of transportation.

### D. Extracurricular Activities

1. A school district's extracurricular activities will be deemed unitary if they "are available to all students within the school district regardless of race." *Singleton*, 541 F.Supp. at 908. Courts scruitinize extracurricular activities under the standard of equal access. *Quarles v. Oxford Mun. Sep. Sch. Dist.*, 868 F.2d 750, 757 (5th Cir.1989) (referencing *Bazemore v. Friday*, 478 U.S. 385 (1986)). The school system must promote minority participation and ensure that no barriers to voluntary participation exist. *See Little Rock Sch. Dist. v. Armstrong*, 359 F.3d 957, 967-968 (8th Cir. 2004). Therefore, a determination that the School Board has eliminated invidious racial distinctions in its extracurricular activities and that no racial barriers exist to prevent any student from participating in such activities will support a finding of unitary status in the area of extracurricular activities. *Swann*, 402 U.S. at 18; *Singleton*, 541 F.Supp. at 908.

2. Based on the facts set out above, the School Board has demonstrated that it has provided its students with extracurricular activities in a nondiscriminatory manner in accordance with these constitutional standards for more than the requisite period.

3. In its review of the District's extracurricular activities, the United States found no objections and has consented to a declaration of unitary status in this area.

4. The Court finds that the School Board is entitled to a declaration of unitary status in the area of extracurricular activities.

## III. Conclusion

The Court finds that the Jackson Parish School Board has, in good faith, maintained nondiscriminatory operations in the areas of facilities, transportation, and extracurricular activities for the requisite period. The Court further accepts and agrees with the conclusion that

the School Board has achieved unitary status and is entitled to dismissal of the injunction entered in this case as to the areas of facilities, transportation, and extracurricular activities.

Therefore, the Court hereby declares that the Jackson Parish School Board has achieved unitary status in the areas of facilities, transportation, and extracurricular activities; and that the injunction and any other orders previously entered in this cause as to said areas are hereby dissolved.

This order does not affect the continued judicial supervision over the remaining *Green* factor areas of student assignment, faculty and staff hiring and assignment.

**SO ORDERED, ADJUDGED AND DECREED**, this 29th day of July, 2013.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

Agreed as to Form & Content:

**For Plaintiff United States of America:**

STEPHANIE A. FINLEY
United States Attorney
Western District of Louisiana

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

ANURIMA BHARGAVA, Chief
FRANZ R. MARSHALL, Deputy Chief
Educational Opportunities Section

 *s/ Torey B. Cummings*
KATHERINE W. VINCENT (#18717)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone: (337) 262-6618
Fax: (337) 262-6693
Katherine.Vincent@usdoj.gov

TOREY B. CUMMINGS
Trial Attorney
United States Department of Justice
Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Avenue, NW, PHB 4300
Washington, D.C. 20530
Telephone: (202) 305-4204
Fax: (202) 514-8337
torey.cummings@usdoj.gov

**For Defendant Jackson Parish School Board:**

**HAMMONDS, SILLS, ADKINS & GUICE**
Physical Address:
1111 S. Foster Drive, Suite C
Baton Rouge, LA 70806
Mailing Address:
P.O. Box 65236
Baton Rouge, LA 70896
Telephone (225) 923-3462
Facsimile (225) 923-0315

  *s/ Robert L. Hammonds*
ROBERT L. HAMMONDS
Louisiana Bar Roll No. 6484